FILED

2025 Mar-31  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| LA'SAUNDRA DUNNIGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.   5:24-cv-00844-HNJ |
| | ) | |
| ALABAMA AGRICULTURAL | ) | |
| AND MECHANICAL | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, La'Saundra Dunnigan, who proceeds *pro se*, filed an Amended Complaint through her former attorney, asserting that Defendant Alabama Agricultural and Mechanical University (A&M), her former employer, violated 26 U.S.C. § 7434 by willfully and fraudulently overstating her taxable income on a W-2 form.   (Doc. 19). Defendant moved to dismiss the Amended Complaint.   (Doc. 24).

As discussed more fully herein, the Eleventh Amendment to the United States Constitution protects A&M from liability on Dunnigan's claim and deprives this court of subject matter jurisdiction because A&M constitutes an arm of the State of Alabama and no abrogation of immunity or consent to suit applies.   Moreover, even if the Eleventh Amendment did not prevent the suit, Dunnigan would fail to state a claim upon which the court can grant relief as A&M does not constitute a "person" under 26 U.S.C. § 7434.

## STANDARD OF REVIEW

Defendant asserts the Eleventh Amendment renders it immune from Plaintiff's claim, thereby invoking a subject matter jurisdiction challenge pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1294 (11th Cir. 2023) (quoting *Seaborn v. Fla. Dep't of Corrs.*, 143 F.3d 1405, 1407 (11th Cir. 1998)) ("'An assertion of Eleventh Amendment immunity essentially challenges a court's subject matter jurisdiction.'"); Fed. R. Civ. P. 12(b)(1) (permitting a party to raise the defense of lack of subject matter jurisdiction by motion).

"Federal courts are courts of limited jurisdiction" and, as such, they possess the power to hear cases only as authorized by the Constitution or United States' laws. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). The plaintiff bears the burden of persuasion on establishing the court's subject matter jurisdiction. *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

The Eleventh Circuit establishes particular modes of review for Rule 12(b)(1) challenges:

> [A] motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) can be based upon either a facial or factual challenge to the complaint. If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised . . .   Accordingly, the court must consider the allegations in the plaintiff's complaint as true . . .
>
> A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion . . .   Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered.   Furthermore, . . . the district court has the power to dismiss for lack of subject matter jurisdiction on any of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing, *inter alia*, *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 20, 1981);[1] *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (internal quotation marks and alterations omitted).

Therefore, a factual challenge to subject matter jurisdiction typically permits a "trial court . . . to weigh the evidence and satisfy itself as to the existence of its power to hear the case."   *Williamson*, 645 F.2d at 413 (quoting *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 884, 891 (3rd Cir. 1977)).   No presumptive truthfulness

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

would attach to a plaintiff's claims, and "the existence of disputed material facts [would] not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Mortensen,* 549 F.2d at 891); *see also Lawrence,* 919 F.2d at 1529.

## ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Dunnigan alleges she attends A&M as a graduate student, and she worked for A&M as a graduate assistant in June 2023. (Doc. 19, ¶¶ 7-8). After a single day of employment, she resigned for personal reasons, and she provided verbal notice of resignation to her supervisor. (*Id.* ¶ 9). A&M paid Dunnigan $100.00 for her single day of work, yet Dunnigan later received a W-2 form from A&M reflecting earnings of $3,000.00. (*Id.* ¶¶ 10-11).

After receiving the erroneous W-2 form, Dunnigan repeatedly contacted A&M's Payroll Department, Human Resources Department, and her former supervisor, on May 8, 2024, to request correction of the error. (*Id.* ¶ 12). Representatives of A&M responded to Dunnigan by e-mail, stating the University's records reflected she worked for three months, and the University issued three payroll checks in June, July, and August 2023, totaling $2909.99, which represented $3,000.00 in wages minus withholdings. (*Id.* ¶ 13).

On May 14, 2024, Dunnigan advised A&M she had not received three checks, and she reiterated she only worked for a single day. (*Id.* ¶ 14). On May 19, 2024, Dunnigan received a letter from the Alabama Department of Revenue stating

Dunnigan's tax return "had been adjusted based on wage and or withholding information submitted by [A&M]." (Doc. 19, ¶ 15). Those adjustments resulted in Dunnigan incurring state tax liability, including fees and penalties, of $214.47. (*Id.* ¶ 16).

On May 25, 2024, Dunnigan submitted a document entitled "Identity Theft Affidavit" to the United States Department of Treasury and the Internal Revenue Service, stating A&M "had submitted a W-2 form for money which [she] never earned or received." (*Id.* ¶ 17). Even so, Dunnigan continued to receive notices from the Alabama Department of Revenue throughout June 2024. (*Id.* ¶ 18). Dunnigan paid the taxes and fees the Alabama Department of Revenue assessed, yet she continues to contest her liability for those taxes and fees, and she maintains the W-2 form erroneously included wages she did not earn. (*Id.* ¶ 20). She filed this suit because A&M did not take any action to correct the erroneous W-2 form. (*Id.* ¶ 19).

Dunnigan asserts a single claim for violation of 26 U.S.C. § 7434. She alleges:

> The Defendant willfully issued Plaintiff a W-2 which reflected that she received wages for three months of employment though she was only employed by the Defendant for one day.

> The W-2 issued by the Defendant constitutes a fraudulent information.

> As a result of Defendant's conduct, Plaintiff has incurred additional taxes, fees and penalties that she would not have occurred but for the fraudulent W-2 form.

Plaintiff is accordingly owed the greater of $5,000 or the sum of the actual damages sustained as a result of the Defendant's unlawful conduct.

Though Plaintiff repeatedly complained to the Defendant about the fraudulent W-2 yet the Defendant refused to take any action to correct its actions for months while the Plaintiff continued to have to fight with the Internal Revenue Service to prove that it was the Defendant who filed false and fraudulent information with the IRS and not the Plaintiff.

(Doc. 19, ¶¶ 22-26 (paragraph numbers omitted)).

## DISCUSSION

A&M argues the Eleventh Amendment protects it from liability on Dunnigan's claim. "As a general proposition, the states, as sovereigns, enjoy immunity from lawsuits brought against them without their consent." *Williams v. Bd. of Trustees of the Univ. of Alabama*, 128 F.4th 1208, 1214 (11th Cir. 2025) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000)).[2] That immunity also extends to "'arms of the State.'" *Id.* (citing *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003)) (cleaned up). In Alabama,

---

[2] The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Though, as the Eleventh Circuit has observed, the Amendment "uses very 'narrow[]' language," courts often more broadly "refer to the states' 'Eleventh Amendment immunity.'" *Williams v. Bd. of Trustees of the Univ. of Alabama*, 128 F.4th 1208, 1214 (11th Cir. 2025) (alteration in original) (quoting *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991)). That construal reflects

the Supreme Court's momentous decision in *Hans v. Louisiana*, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890), courts "have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact" and "that the judicial authority in Article III is limited by this sovereignty." *Blatchford*, 501 U.S. at 779 . . . .

*Williams*, 128 F.4th at 1214.

6

a public university constitutes an arm of the State and generally enjoys Eleventh Amendment immunity.  *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 3 F.3d 1482, 1485 (11ᵗʰ Cir. 1993), *reh'g en banc granted, opinion vacated*, 19 F.3d 1370 (11ᵗʰ Cir. 1994), and *on reh'g*, 28 F.3d 1146 (11ᵗʰ Cir. 1994) (citing *Harden v. Adams,* 760 F.2d 1158 (11ᵗʰ Cir.), *cert. denied,* 474 U.S. 1007 (1985)); *see also Williams,* 128 F.4ᵗʰ at 1214 (characterizing the Board of Trustees of the University of Alabama as an arm of the State); *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146, 1148 (11ᵗʰ Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002) (characterizing the members of the Board of Trustees of Alabama A&M University as "state university officials").

Two exceptions exist to the general rule granting Eleventh Amendment immunity to a State.  "First, Congress, acting pursuant to its Fourteenth Amendment enforcement powers, . . . may 'abrogate' states' immunity" by "'unequivocally' expressing its intent to strip the states of their immunity," so long as Congress's use of that authority exhibits "'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'"  *Williams,* 128 F.4ᵗʰ at 1214 (citing U.S. Const. amend XIV, § 5; *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363, 365 (2001)).[3]

Second, a state "may consent to be sued."  *Id.* at 1215.

---

[3] This review "often involves a deep dive into the measure's legislative history and underlying purposes."  *Williams*, 128 F. 4th at 1214-15 (citations omitted).

Such consent can of course be manifested in the usual ways – say, through a contract or state statute waiving immunity. *See* [*Sossamon v. Texas,* 563 U.S. 277, 284 (2011)]  ("A State . . . may choose to waive its immunity in federal court at its pleasure."); *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306-07, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990) (discussing state statutes that manifested consent to suit). But there's another possibility.  The Supreme Court has explained that a state may also be sued "if it has agreed to suit in the 'plan of the Convention,' which is shorthand for 'the structure of the original Constitution itself.'" *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 500, 141 S. Ct. 2244, 210 L. Ed. 2d 624 (2021) (quoting *Alden v. Maine*, 527 U.S. 706, 728, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999)).  Under this "plan of the Convention" doctrine, there are "certain waivers of sovereign immunity to which all States implicitly consented at the founding." *Id.*  When a lawsuit slots into one of these "certain waivers," *id.*, "no congressional abrogation [is] needed" because there's nothing to abrogate – "the States ha[ve] already 'agreed in the plan of the Convention not to assert any sovereign immunity defense,'" *Allen v. Cooper*, 589 U.S. 248, 258-59, 140 S. Ct. 994, 206 L. Ed. 2d 291 (2020) (quoting *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 377, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006)).

*Williams*, 128 F.4th at 1215.

Dunnigan does not argue the State of Alabama waived its Eleventh Amendment immunity as to 26 U.S.C. § 7434, and established authority dictates the State has not done so.  *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (finding Article I, § 14, of the Alabama Constitution prohibits Alabama from giving its consent to suit and therefore the State of Alabama received Eleventh Amendment immunity); *Boglin v. Bd. of Trustees of Alabama Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1263 (N.D. Ala. 2018) (citing *Alabama A & M University v. Jones*, 895 So. 2d 867, 873 (Ala. 2004)) ("Alabama has not waived its immunity.").

8

Moreover, Congress did not abrogate the State of Alabama's immunity when it enacted 26 U.S.C. § 7434. The statute does not mention suits against states at all, much less express the unequivocal intent necessary to strip states of their immunity. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 346 (2023) (citing *Kimel*, 528 U.S. at 73; *Sossamon*, 563 U.S. at 287) (characterizing the "standard for finding a congressional abrogation" as "stringent" and observing "Congress . . . must make its intent to abrogate sovereign immunity 'unmistakably clear in the language of the statute.'").

Dunnigan's arguments in favor of finding an abrogation of immunity do not persuade the court. First, Dunnigan asserts no case law exists "in which a state agency was deemed immune from a claim alleging that it, as the employer of the claimant, filed a fraudulent return with the IRS regarding wages it purportedly paid the claimant." (Doc. 30, at 5). The court's research supports the accuracy of that statement on its face, yet the statement bears scant probative value: the court's research also revealed no case in which the court *denied* immunity to a State or State agency under 26 U.S.C. § 7434. In fact, the court's research revealed no case nationwide addressing a § 7434 claim against a State or State agency. That outcome likely results from the conclusion as to Dunnigan's second argument.

Second, Dunnigan asserts that, as the I.R.S. defines the term "employer" to include State agencies, instrumentalities, and subdivisions (26 C.F.R. §§ 31.3401(d)-

9

1(d)), and the I.R.S. requires employers to file accurate W-2 forms, Congress intended State agencies, instrumentalities, and subdivisions to fall under the coverage of § 7434. However, the statute does not use the term "employer."   Rather, § 7434 creates liability for any "person" who files a fraudulent information return.  *See* 26 U.S.C. § 7434(a) ("If any *person* willfully filed a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.") (emphasis added).

Section 7434 does not define the term "person"; consequently, the default definition in 26 U.S.C. § 7701(a)(1) applies.  *See* 26 U.S.C. § 7701(a) (providing definitions for terms "used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof"); *Marsoun v. United States*, 525 F. Supp. 2d 206, 212-13 (D.D.C. 2007) (applying § 7701's presumptive definition of "person" to 26 U.S.C. § 7431(a)(2), which did not separately define the term).   Section 7701(a)(1) defines the term "person" to "mean and include an individual, a trust, estate, partnership, association, company or corporation."   26 U.S.C. § 7701(a)(1).   That section provides a separate definition for the term "State," *see id.* § 7701(a)(10), indicating that Congress intended the term "person" not to encompass a "State," unless otherwise so specified. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) (citations omitted) ("[I]n common usage, the term 'person' does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it.")

10

(cleaned up); *Savage Servs. Corp. v. United States*, 25 F.4th 925, 9334 (11ᵗʰ Cir. 2022) (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000); *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 667 (1979)) (principle that the statutory term "person" does not include a sovereign applies with even more force "'where the statute imposes a burden or limitation, as distinguished from conferring a benefit or advantage,' on the sovereign").

As no statutory provision indicates Congress intended § 7434 to create liability for sovereign entities like a State or its instrumentalities, and Supreme Court authority requires construing the term "person" to exclude sovereign entities (particularly where the statute imposes a burden upon the designation), the court finds § 7434 provides no explicit abrogation of a State's Eleventh Amendment immunity.

In summary, A&M constitutes an arm of the State of Alabama, and no abrogation of immunity or consent to suit exists.   Therefore, the Eleventh Amendment protects A&M from liability on Dunnigan's 26 U.S.C. § 7434 claim, and thus, the court lacks subject matter jurisdiction over Dunnigan's claim.   Moreover, even if the Eleventh Amendment did not prevent the suit, Dunnigan would fail to state a claim upon which the court could grant relief because A&M does not constitute a "person" under § 7434.

## CONCLUSION

In accordance with the foregoing analysis, the court **GRANTS** Defendant's

motion to dismiss Plaintiff's Amended Complaint and **DISMISSES** all of Plaintiff's claims with prejudice.

Dunnigan also filed a motion to compel admission of exculpatory evidence (Doc. 42) and a motion for in-person hearings. (Doc. 44).  As this court lacks jurisdiction over the case, those motions stand **MOOT**.

**DONE** and **ORDERED** this 31st day of March, 2025.

_____

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE